**WRIGHT, ESTATE OF, In Re**

Ohio Probate Court, Lucas Co

Decided Oct 11, 1935

Boggs & Chase, Toledo, and Denman, Miller & Beatty, Toledo, for The Ohio Savings Bank & Trust Co. and superintendent of banks.

Smith, Baker, Effler & Eastman, Toledo, for Toledo Trust Co.

## OPINION

By CHITTENDEN, J.

The Ohio Savings Bank & Trust Company and Ira J. Fulton, superintendent of banks in charge of the liquidation of said The Ohio Savings Bank & Trust Company filed their third and final account as trustee under the last will of Nathaniel C. Wright.

The Toledo Trust Company, as successor trustee, filed exceptions to the account and those exceptions have been heard on the evidence and submitted to the court.

The exceptions allege first that the purchase by the trustee, on February 28, 1931, from The Ohio Savings Bank & Trust Company of mortgage participation certificate for the sum of Ten Thousand Dollars ($10,000) was unlawful; Secondly, that the trustee held Thirty-three Hundred Forty-two Dollars and Sixty-nine Cents ($3,342.69), and that it was unlawful to hold such sum uninvested; thirdly, that the trustee and the superintendent of banks are not entitled to fees while the trustee was in process of liquidation.

This trust originated in an action by the executive committee of The Ohio Savings Bank & Trust Company, on May 12, 1926, approving the establishing of a real estate mortgage trust for the investment of money held by the bank in any fiduciary capacity, approving the declaration of trust, and authorizing the investment of Seventy Thousand Dollars ($70,000), of the general funds of the bank in such trust. The action of the executive committee was thereafter confirmed by the board of directors. The purpose of this trust is set forth in the declaration of trust as follows:

"(a) To provide a method whereby funds held by it in a fiduciary capacity, for varying lengths of time, and in various amounts, and for sundry parties, may be effectively loaned upon real estate security, where such security does not accord in amount or maturity, with the amount of the fund to be invested nor the time it is desired to have such investment continue."

It is claimed that the trust is non-existent for the reason that there was no corpus and no beneficiaries at the inception of the trust. This contention is stated to be based on the case of Ulmer v Fulton, 129 Oh St 323, 2 O.O. 326. The decision in that case, however, seems to be grounded on other considerations.

In the case of Fulton, Supt. v Gardiner, 127 Oh St 77, it was held that a trust must have a corpus; that there must be a body from which proceeds are produced, or if not productive, so much of the corpus must be taken to meet the charge.

In the Gardiner case there was, as the court said, "no corpus or res other than the check given by lessees on its commercial account, the commercial account was charged with it and it was credited to the trust account." The court found that the case was not to be distinguished from McDonald, Admr. v Fulton, 125 Oh St 507, in which case the bank, as trustee, had deposited money, pending investment, in its commercial department, and was held to be only a general creditor of the bank.

In the case of Ulmer v Fulton et, 129 Oh St 323, 2 O.O. 326, it was determined that a bank and trust company is not authorized to create a trust out of its own securities and sell to the public participation certificates therein, and that such undertakings are opposed to sound public policy, and are invalid.

Is the real estate trust in question in this proceeding free from the objections found in the above-mentioned cases?

This trust differs in many respects from the trust under examination in the case of Ulmer v Fulton et al. In that case, all the notes, mortgages, and bonds were with-

drawn from the files of the bank. The bank retained title, possession and control of all such securities. The mortgages drew 6% interest while the certificates only drew 5%. The bank reserved full authority to withdraw any mortgage and substitute others.

In the trust involved in this proceeding, no securities were taken from the bank. The trust is to receive the full amount of interest. The evidence shows that uninvested fiduciary funds in possession of the bank were deposited in its commercial department in an account designated "uninvested trust funds." As loans were made from such uninvested fiduciary funds, the securities were segregated and kept in the files of this particular trust. Certificates were then issued evidencing the amount contributed by some particular trust to the trust fund.

Does such an investment constitute a lawful investment of trust funds?

The law in effect at the time of this investment is found in §11214, GC, as follows:

"When they have funds belonging to the trust which are to be invested, executors, administrators, guardians, including guardians of the estate of minors, and trustees, may invest them in bonds or certificates of indebtedness of this state, of the United States, or in the bonds or certificates of indebtedness of any county, city, village or school district in this state, on which default has never been made in the payment of interest, or in bonds issued by any bank, organized under the provisions of the Act of Congress known as the Federal Farm Loan Act, approved July 17, 1916, and amendments thereto, or in such other securities as the court having control of the administration of the trust approves."

The investment by a guardian was further limited by §10933, GC, in notes secured by first mortgage on real estate of at least double the value of the money loaned or invested.

Paragraph 3 of the declaration of trust is as follows:

"Trustee declares and agrees that it will, from time to time, in its discretion, loan money from the funds deposited in this trust, such loans to be secured by mortgages upon real estate located in Lucas County, Ohio; that said loans shall not exceed sixty per cent (60%) of the value of the real estate securing said loans as trustee may in good faith believe such value to be; that the interest ratio upon such loans shall not be less than six per cent (6%) per annum, payable annually; that such loans and the security therefor, together with the evidence thereof, shall be held for the pro rata use and benefit of the persons contributing to this trust fund; that it will issue to such persons "Participation Certificates" evidencing the several amounts so contributed, the form thereof to be substantially as that annexed hereto marked Exhibit 'A.' When deemed desirable in the interest of the trust, trustee may withdraw any of the above mentioned notes and mortgages, and substitute others therefor, conforming in all respects to the foregoing requirements."

It thus appears that guardianship funds at least could not be legally invested in such trust fund.

Does this trust furnish a proper investment for other fiduciary funds?

The declaration provides that the securities shall be held for the pro rata use and benefit of the persons contributing to the fund, and also provides that losses in investments and securities made and held by virtue of such declaration shall be borne pro rata by the participation certificate holders. The trustee also is given the right at any distributive period upon giving ten days' notice, to call for redemption any participation certificate by paying principal and pro rata interest, or principal reduced by losses. Thus it provided that the bank, as fiduciary in numerous trusts, may place its various trust investments in a common pool and require the beneficiaries to share in any loss that may arise from any of the securities deposited in this trust. No matter with what fiduciary money a defaulting mortgage or bond had been purchased, every particular trust represented by participating certificates must share the loss.

The trustee is also permitted to advance money, if necessary to make a 6% interest distribution, and reimburse itself from any interest money thereafter received by it. It is not limited to reimbursement from the payment of delinquent interest.

The trustee also retained the right in its discretion, to sell at such prices and upon such terms as it deemed advisable any of the securities held by it.

This bank was the fiduciary in a considerable number of trusts of differing character. There is no statutory authority for a bank administering its trust in any different manner than that of other fiduciaries. Certainly no individual having several

different trusts, or a combination of individual trustees, would be permitted to thus pool their fiduciary investments.

The court finds that not only is there no statutory authority for the establishing of such trust for the investment of fiduciary funds, but that its use is contrary to the law governing the administration of fiduciary trusts that are under the jurisdiction of the Probate Court.

No approval of the investment in these participating trust certificates, as required by §11214, GC, was asked of or given by the Probate Court. It is claimed, however, that the excepting trustee is estopped from questioning this investment because of the action of the beneficiaries of the trust.

The will of Nathaniel C. Wright provided that all transactions and exercises of power shall be made "after a conference with and to the approval of Frederick S. Buggie;" and provided further that in the event of his death or inability to act, then Harry S. Talmadge shall act as such committee for the purpose of conferring with the trustee and approving any investment or other transaction.

The record shows that both Frederick S. Buggie and Harry S. Talmadge resigned as such committee, and that upon the application of Etha A. Wright, Charles Howard Wright and Katherine R. Wright, the court appointed William W. Wright as a committee under the last will and testament to take the place of Frederick S. Buggie and Harry S. Talmadge. The three named applicants were all of the beneficiaries under the trust created by the last will of Nathaniel C. Wright. The will of Mr. Wright contained. no provision for appointing a successor to Buggie and Talmadge. The appointment, however, having been made upon the application of the beneficiaries, the trustee reported to William W. Wright its transactions with reference to the trust.

A letter from W. W. Wright to Carl F. Kelb, cashier of the trust department of The Ohio Savings Bank & Trust Company, under date of March 10, 1931, acknowledges receipt of a statement of February 19, and in which he observes the investment in the mortgage participation certificate for Ten Thousand Dollars ($10,000). He also notes that the certificate is dated December 16, 1930 and asks for further information relating to that security. Other correspondence relating to it ensues. It nowhere appears in the evidence that Mr. W. W. Wright objected to or excepted to this investment. Mr. Wright testified upon the hearing, and stated that at no time had he been informed that at the time of the investment, numerous mortgages contained in the trust were delinquent in the payment of interest and principal. The evidence shows that at the time of the investment there were delinquencies in the payment of both interest and principal. The evidence shows that Mr. W. W. Wright was not conferred with prior to the purchase of this participation certificate and was not advised of the purchase for some three months thereafter. As above noted, the will provides that transactions relative to the trust shall be made and had after conference with and to the approval of Frederick S. Buggie. If it be assumed that Mr. Wright was properly appointed to succeed Mr. Buggie, it is apparent that the investment was made contrary to the provisions of the will governing the trust, inasmuch as an investment was made before conference with Mr. Wright, and without receiving his approval.

The Supreme Court in the case of Ulmer v Fulton et al, supra, finds that an act void because beyond the power. of the bank cannot be made good by estoppel.

In view of what has been said, the **first exception** to the account is **sustained.**

The second exception complains that the bank unlawfully held in its possession, without investment, the sum of Thirty-three Hundred Forty-two Dollars and Sixty-nine Cents ($3,342.69). There is no evidence to show that in January of 1932 or at any time since then, there was an opportunity to make a proper investment of such fund. The **second exception** will therefore be **overruled.**

The third exception objects to the allowance to The Ohio Savings Bank & Trust Company or to Ira J. Fulton, superintendent of banks in charge of liquidation of said bank, of any commission for services rendered in relation to the trust after the bank was taken over for liquidation on August 16, 1931. This question was discussed and decided by Judge Brewer in the Probate Court of Cuyahoga County in the case In re **Estate of Carrie Baldwin**, 1 O.O. 252. Following the decision of Judge Brewer, this court holds that neither the bank nor the superintendent of banks is entitled to such commission. The **third exception** is therefore **sustained.**

Counsel will draw an entry pursuant to the foregoing opinion.